**STARR, Atty. Gen., v. SCHRAM.**
No. 8321.

District Court, E. D. Michigan, S. D.
July 6, 1938.

Raymond W. Starr, Atty. Gen., of Michigan, Charles J. Dovel, State Public Adm'r, of Lansing, and Edward P. Echlin, Public Adm'r, of Detroit, for plaintiff.

Robert S. Marx, Carl Runge, and Lawrence I. Levi, all of Detroit, for defendant.

LEDERLE, District Judge.

Plaintiff, being duly authorized to represent the State of Michigan, filed a bill of complaint in accordance with the provisions of Section 274d of the Judicial Code, Section 400, U.S.C., title 28, 28 U.S.C.A. § 400, for the purpose of determining the right of the Board of Escheats of the State of Michigan to certain funds now in the possession of the defendant, a receiver of an insolvent National Banking Association.

A stipulation as to the facts was filed and the case was well briefed and well argued on behalf of both parties.

The First National Bank-Detroit was a very large banking institution which came into being as a result of a merger of a number of state banks and national banks. It closed its doors on the 11th day of February 1933 and did not thereafter resume the conduct of normal banking business. It had its principal place of business in the City of Detroit, Wayne County, Michigan.

The Comptroller of the Currency made a finding that the bank was insolvent and appointed a receiver. The present defendant, B. C. Schram, is the successor receiver duly appointed by the Comptroller, and as such qualified and acting receiver has the custody of all of the assets of the First National Bank-Detroit.

The Constitution of the State of Michigan and the statutes make complete provision for the custody of funds of missing persons and provide for the establishment of a Board of Escheats made up of public officers who act as trustees of such funds. Constitution of Michigan 1908, Article 6, Section 20; Article 2, Section 16; Compiled Laws of Michigan 1929, Section 5852, Section 13440, and Sections 13454 to and including Section 13477 and Section 15611; Public Acts of Michigan for 1933, Acts Nos. 40, 45, 171.

These laws make it the duty of banks and receivers for banks to report to the public authorities cases in which accounts with depositors have remained inactive for the statutory period and under certain circumstances require the bank or its receiver to turn over such funds to the Board of Escheats. If these statutes are valid, and if they are applicable to a receiver of an insolvent national banking association, the plaintiff is entitled to a decree requiring the defendant to make the reports provided for in the statute and requiring him to account for the funds in his custody, coming within the provisions of the statute.

■ It is the claim of the defendant that the provisions of the statute which require him to turn over the funds to the State are unconstitutional. This is not a valid defense to this action, in that the defendant is not in a position to question the validity of a State statute that does not injure him. He is under no obligation to question the validity of a statute merely because it may violate the rights of some third party. Premier-Pabst Sales Co. v. Grosscup, 298 U.S. 226, 56 S.Ct. 754, 80 L. Ed. 1155; Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814.

■ The Receiver further questions the application of the Statutes to an insolvent national bank. When he first assumed control of the assets of this bank he complied with the provisions of the Statutes and continued to do so until December, 1936. During this time he turned over to the State a sum in excess of $400,000 and it does not appear that any persons interested in any of the deposits ever objected to this procedure. The Michigan Statutes adequately protect the interests of the missing depositor. The precedure fixed by these laws has been sustained generally by the Michigan courts. The legislation is valid and does not contravene any provisions of either the federal or state constitutions. The missing depositor does not lose any rights in having his funds transferred to the custody of the State for, if the depositor abandons the funds, the State has the undoubted right to claim them.

■ The defendant is an officer of the United States and will not be injured if it is later learned that in complying with the Michigan Statutes he was in error. Auten v. U. S. National Bank of New York, 174 U.S. 125, 140, 19 S.Ct. 628, 43 L.Ed. 920.

■ National banks are "subject to the laws of a state in respect to their affairs, unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States." First National Bank v. Missouri, 263 U.S. 640, 44 S.Ct. 213, 215, 68 L.Ed. 486. First National Bank v. Commonwealth of Kentucky, 9 Wall. 353, 19 L. Ed. 701.

■ Valid escheat laws of a state apply to national banks. Territory of Alaska v. First National Bank of Fairbanks, 9 Cir., 41 F.2d 186.

■ Unclaimed moneys in the possession of an officer of the United States are subject to the escheat laws of the state. See United States v. Phillip Klein, Escheator, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840, decided by the United States Supreme Court, February 28, 1938.

■ The insolvency of the First National Bank of Detroit did not terminate its corporate existence nor render inoperative the laws of the state. Connolly v. First National Bank, 6 Cir., 86 F.2d 683, 686.

■ Upon the appointment of a Receiver for an insolvent bank, the assets become a trust fund in the hands of the Receiver, which are paid over to the Comptroller and the Comptroller is authorized to make a ratable dividend, " * * * on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, * * *". 12 U.S. C.A. § 194.

■ Under the laws of the State of Michigan, it is the duty of the Attorney General to file requests for lists and after taking proper procedure as outlined in the statute to claim funds belonging to so called missing persons. There is nothing in the procedure outlined in the Michigan Statute which is inconsistent with the laws passed by Congress, providing for the distribution

of the assets in the hands of the Comptroller.

 Neither the creditors of an insolvent national bank nor the corporation itself has any legal or equitable right to claim funds that admittedly belong to such missing persons or their legal representatives. There is nothing in the National Banking Act which indicates that Congress intended that such funds should be arbitrarily turned over either to the other creditors or to the insolvent corporation.

It seems obvious that the receiver would not acquire title to the funds in question unless he did so by operation of law. The State of Michigan has elected to take custody of such funds itself, which it had a right to do, and to preserve such funds for the benefit of the depositor or his heirs, and in case neither the depositor nor his heirs made claim for them, to provide that they should escheat to the state. This legislation is valid and binding upon this court.

 However, the rights of the plaintiff like the rights of every other claimant to the trust funds in the hands of the receiver were fixed as of February 11, 1933. The National Banking Act makes complete provision for the distribution of all of the funds derived from the liquidation of the assets of a National Banking Association. 12 U.S.C.A. § 194. The system outlined by the National Banking Act is exclusive and the state laws cannot be so construed as to invade this exclusive federal field. Cook County National Bank v. U. S., 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537; Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700.

 This act provides for the filing of claims and the paying of dividends and the final winding up of the affairs of such a bank. The trust funds in the hands of the Receiver are to be distributed to persons whose claims have been proved to the satisfaction of the Comptroller or adjudicated in a Court of competent jurisdiction. The National Banking Act does not provide for turning funds over to the plaintiff in case the records of the bank indicate that some depositors or creditors have not filed claims and the State of Michigan cannot acquire any additional rights in the funds of the closed bank because of the failure of such depositors or creditors to file claims. Likewise the Receiver is not required to account to the plaintiff for unsurrendered negotiable instruments, such as Certificates of Deposit, Cashiers Checks, Certified Checks and Drafts on correspondent banks, nor for the inactive accounts of corporations, partnerships or associations.

 A decree may be entered directing the defendant Receiver to account to the plaintiff in accordance with the Statutes for all deposits belonging to persons who have not had any dealings with the bank for a period of seven (7) years prior to February 11, 1933, and denying all of the other claims of the plaintiff.