AMERICAN NAT. BANK OF NASHVILLE *et al. v.* CLARKE,
SUPERINTENDENT OF BANKS, *et al.*

(*Nashville,* December Term, 1939.)

Opinion filed February 3, 1940.

Bass, Berry & Sims, of Nashville, for complainants.

Roy H. Beeler, Attorney-General, and W. F. Barry, and Dudley Porter, Jr., Assistant Attorneys-General, for defendants.

Mr. Justice DeHaven delivered the opinion of the Court.

The question presented for determination is whether Chapter 161, Public Acts 1939, of the General Assembly of Tennessee, is constitutional as applied to National Banks.

The caption of the Act is as follows:

"An Act to declare that certain deposits in banking institutions, certain deposits with public utilities, and certain cash dividends shall be deemed to be abandoned property, and to provide for turning over such abandoned property to the State of Tennessee; to provide for the reclaiming of such abandoned property and for the enforcement of this Act and to provide penalties for its violation."

The preamble to the Act is as follows:

"Whereas, it is common knowledge that banks and other corporations sometimes become insolvent or go out of business, while the State never does either;

"Whereas, it is to the interest of both the State and

the depositor in such institutions for the State to step in and hold safe for such depositor his deposit, which from its long standing it may well be assumed that he has forgotten or abandoned, or by reason of some disability, is not able to claim''.

By section 1, it is provided that for the purpose of the Act ''banking institutions'' shall include every state bank, national bank, savings bank, trust company and other banking institutions within this State, including institutions that have been or are being liquidated.

Section 2 of the Act is as follows:

''Be it further enacted, That whenever any particular deposit of money in any banking institution or otherwise shall not have been increased or decreased or otherwise dealt with in any manner by the depositor for the period of fifteen successive years in all cases except savings funds and time deposits, and for the period of twenty-five successive years in case of savings funds and time deposits, such deposit of money shall be deemed to be abandoned property and shall be turned over to the State of Tennessee in the manner hereinafter provided, except that it is expressly provided that any Bank in which such funds are on deposit, or any claimant of such fund or funds, shall have the right to show that the same is not abandoned property in fact, and if any such bona fide claimant exists, then such funds shall not be turned over to the State, and the provisions of this Act shall not apply.

''Abandoned property, as described in this Section, shall be defined as bank deposits which have not been balanced by the presentation by the depositor of a pass book for a period of fifteen (15) years or more in the case of commercial accounts and for a period of twenty-five (25)

years or more in the case of savings accounts, except as herein otherwise provided.''

The Act contains similar provisions with reference to deposits with any public utility by a consumer. And it is provided that whenever any cash dividend by any corporation shall have remained unclaimed by the stockholder entitled thereto for a period of fifteen successive years after the declaring of such dividend, it shall be deemed to be abandoned property and shall be turned over to the State.

The Act also provides that whenever any banking institution, public utility or other corporation shall be or shall have been dissolved, either voluntarily or involuntarily, by order of court or otherwise, any unclaimed deposits or unclaimed cash dividends ''shall, regardless of the length of time such bank deposits, consumer deposits or cash dividends may have remained unclaimed by the rightful owner thereof, be deemed to be abandoned property, and shall immediately be reported and turned over to the Commissioner of Finance and Taxation of the State of Tennessee.''

The Act further provides that on or before the 1st day of May in every calendar year, the cashier or secretary of any banking institution holding any deposits which are abandoned property within the meaning of Section 2 of the Act, shall make and send to the Commissioner of Finance and Taxation of Tennessee a sworn report showing the amount of each deposit, including interest, which has been abandoned, together with the last known residence or post office address of the depositor and the fact of his death, if known; that the person making the report shall post a copy of the report in the banking institution and in the courthouse of the county; that in the event the Commissioner deems it necessary

to have additional information concerning the report, or, in the event the person required to make the report fails to do so, the Commissioner may issue subpoena to require any person to appear before him, or his duly authorized agent, "and to bring with him such books, papers and records as may be required by said subpoena, and such person, or persons, may be then and there examined, under oath," as to any matter pertaining to this section (6) of this Act. A like provision is made with respect to public utilities and other corporations embraced in the Act. That within fifteen days after the receipt of such sworn report, the Commissioner shall cause the report to be published in a newspaper in the town or county where the banking institution or corporation is located; or, if there is no newspaper published in such town or county, then in a newspaper published in the nearest town or county.

It is further provided in the Act that between June 1st and June 5th of each year the person making the report above required, or some other officer or agent of the banking institution, public utility, or corporation holding any property which has been abandoned within the meaning of the Act, "shall forward and deliver the said abandoned property to the Commissioner of Finance and Taxation at Nashville; provided, however, that any rightful owner may claim or withdraw his money prior to the time same is forwarded to the Commissioner." It is further provided that upon the transfer and payment to the Department of Finance and Taxation of any money deemed to be abandoned property, the banking institution, utility or corporation or company making such transfer and payment, "is hereby relieved of any liability to the rightful owner of such property."

It is further provided in the event any banking institution, utility or corporation, shall fail or refuse to make payment to the Commissioner as required, "the Commissioner shall commence and prosecute against such banking institution, public utility or corporation a *mandamus* proceeding, mandatory injunction proceeding, or other appropriate proceeding to compel such payment. There shall be added to the judgment ultimately obtained . . . a penalty equal to five per cent of the amount of the judgment."

The Superintendent of Banks, upon the written request of the Commissioner of Finance and Taxation, shall examine only such books and records of any banking institution which are pertinent to the enforcement of the Act. The Commissioner is given like power with respect to the records and books of any public utility or corporation. For each refusal to permit an examination of books and records as above provided, "a penalty of one hundred dollars is hereby imposed," to be recovered by appropriate action.

The Act then goes along to provide that all money paid to the Commissioner shall, after payment of cost of administration, be paid into the State Treasury. That after payment to the Commissioner, a claimant may file with the Commissioner, his claim for a refund, and in case his claim is denied he is given the right to review by *certiorari* under Code, section 9008 *et seq.,* except that such petition "shall be filed only in the Chancery Court of Davidson County and not elsewhere." Section 12.

The Act further provides that the provisions of the Act are declared to be severable, and if any part of the Act be held unconstitutional or void, the remainder of the Act shall continue in force, such being the legislative intent.

It is alleged in the bill that all of the complainants are chartered, organized and doing business under and by virtue of the National Banking Laws of the United States, U. S. Rev. Statutes, section 5133 et seq., U. S. C. A., title 12, sections 21-24, and hold deposits aggregating a substantial amount which fall under a class which the Act in question defines as abandoned deposits; that some of the complainants have declared cash dividends which have remained unclaimed by the stockholders entitled thereto for a period of fifteen successive years after the declaring of such dividends; that so far as complainants know, said depositors in each and every instance are alive and intend when they so desire to claim or transfer their deposits; that if any of the depositors are dead they have no knowledge of their death or that they failed to leave distributors or other lawful beneficiaries; that each and all of the complainants are materially affected by the provisions of the Act and that they will be deprived of their constitutional rights if same is permitted to be enforced against them. The bill alleges that the Act is invalid because in violation of Article 1, section 8, of the Federal Constitution, and the National Banking Laws enacted by the Congress under and pursuant thereto; that the Act is unconstitutional in that it deprives complainants of this property without due process, in violation of section 1 of the 14th Amendment, and in violation of Article 1, section 10, of the Federal Constitution, in part, forbidding a law impairing the obligation of contracts, and Article 1, section 20, of the Constitution of Tennessee, to like effect.

A demurrer was filed by the defendants on the ground that the Act in question is valid and constitutional. The chancellor overruled the demurrer and held the Act

unconstitutional as to these complainants and granting the relief prayed for in the bill.

Defendants have appealed to this court and assigned errors.

It is complained by one of the assignments that the chancellor was in error in holding the Act here under investigation constitutes an unauthorized interference with the power and authority of national banks.

National banks being incorporated under the laws of the United States, enacted in pursuance of the Constitution of the United States, the states are without legal right to pass any law which will impede, burden or control such banks in the exercise of their powers. *Davis* v. *Elmira Sav. Bank,* 161 U. S., 275, 16 S. Ct., 502, 40 L. Ed., 700; *Farmers' & M. Nat. Bank* v. *Dearing,* 91 U. S., 29, 23 L. Ed., 196.

Among other powers conferred by the Congress upon national banks is the right to receive deposits of money. Without the free exercise of this right, as regulated by Federal legislation, the banks could not survive. Hence, it can be readily seen that any state law which interferes with this right is in conflict with the laws of the United States, and therefore, void.

The Act here in question is not an escheat statute, but is one where the state has undertaken to say that funds to the credit of a depositor in a "banking institution" (including a national bank), where the account has remained inactive for fifteen successive years, or for the period of twenty-five years in the case of savings funds and time deposits, "shall be deemed to be abandoned property and shall be turned over to the State," without any judicial proceeding brought against the bank, or the depositor, to have the funds declared abandoned property.

Valid escheat laws of a state apply to national banks. *Territory of Alaska* v. *First National Bank of Fairbanks,* 9 Cir., 41 F. (2d), 186. But, as above stated, the Act here in question is not an escheat law. It merely requires that a bank turn over to the State the funds to the credit of a depositor, when his account had remained inactive for a term of years.

In *First National Bank of San Jose* v. *State of California,* 262 U. S., 366, 43 S. Ct., 602, 603, 67 L. Ed., 1030, it appears from the opinion that section 1273 of the California Code of Civil Procedure provides that all amounts of money deposited with any bank to the credit of depositors who have not made a deposit on said account or withdrawn any part thereof and which shall have remained unclaimed for more than twenty years after the date of such deposit or withdrawal, and where neither the depositor nor any claimant had filed any notice with the bank showing his present residence ''shall with the increase and proceeds thereof, escheat to the state.'' The statute further directs the Attorney-General to institute action against the banks and the depositors to recover such amounts and, if it be determined that the moneys so deposited are unclaimed, as thereinbefore stated, that the court may render judgment in favor of the state declaring that said moneys have escheated to the state and commanding the bank to forthwith deposit all such moneys with the State Treasury. The Supreme Court of California held the law valid and applicable to national banks. This holding was reversed by the Supreme Court of the United States. The court said:

''Section 5136, U. S. Revised Statutes [12 U. S. C. A., section 24], confers upon national banks power to receive deposits, which necessarily implies the right to accept loans of money, promising to repay upon demand

to lender or his order. These banks are instrumentalities of the federal government. Their contracts and dealings are subject to the operation of general and undiscriminating state laws, which do not conflict with the letter or the general object and purposes of congressional legislation. But any attempt by a state to define their duties or control the conduct of their affairs is void, whenever it conflicts with the laws of the United States or frustrates the purposes of the national legislation, or impairs the efficiency of the bank to discharge the duties for which it was created. *Davis* v. *Elmira Sav. Bank,* 161 U. S., 275, 283, 288, 290, 16 S. Ct., 502, 40 L. Ed., 700.

" 'National banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. . . . Being such means, brought into existence for this purpose, and intended to be so employed, the states can exercise no control over them, nor in any wise affect their operation, except in so far as Congress may see proper to permit. Anything beyond this is ''an abuse, because it is usurpation of power which a single state cannot give.'' ' *Farmers' & M. Nat. Bank* v. *Dearing,* 91 U. S., 29, 33, 34, 23 L. Ed., 196.''

The court then went on to say:

''Plainly, no state may prohibit national banks from accepting deposits, or directly impair their efficiency in that regard. And we think, under circumstances like those here revealed, a state may not dissolve contracts of deposit even after 20 years, and require national banks to pay to it the amounts then due; the settled principles stated above oppose such power.

"Does the statute conflict with the letter or general object and purposes of the legislation by Congress? Obviously, it attempts to qualify in an unusual way agreements between national banks and their customers long understood to arise when the former receive deposits under their plainly granted powers."

It is insisted on behalf of the defendants that the authority of *First National Bank of San Jose* v. *State of California, supra,* has been impaired by the decisions in *Starr, Attorney-General,* v. *Schram* (D. C.), 24 F. Supp., 888, and *Territory of Alaska* v. *First National Bank of Fairbanks,* 9 Cir., 22 F. (2d), 377. An examination of these cases reveals, we think, that they are not in conflict with *National Bank* v. *California, supra.* Counsel for defendants rely upon *United States* v. *Klein, Escheator of Pa.,* 303 U. S., 276, 58 S. Ct., 536, 82 L. Ed., 840, and *Commonwealth* v. *Dollar Savings Bank,* 259 Pa., 138, 102 A., 569, 1 A. L. R., 1048. In the Klein case the court held that a statute of the State of Pennsylvania is not, insofar as it purports to confer jurisdiction on a state tribunal to declare the escheat of moneys deposited in the registry of a Federal court and later covered into the Treasury of the United States, unconstitutional as authorizing interference with a Federal court and as an invasion of the sovereignty of the United States; that the decree of the state court was an adjudication upon the title to the fund, and section 996 of the Revised Statutes (28 U. S. C. A., section 852) contemplates that changes in ownership of the funds may occur, since it provides that after the right to the fund has been finally adjudicated and it has been covered into the treasury it shall be paid over to any person entitled thereto. The Klein case seems inapplicable to the case

at bar and is readily distinguishable from *First National Bank of San Jose* v. *California, supra.* In the case of *Commonwealth* v. *Dollar Savings Bank, supra,* the right of the State to recover from the bank deposits unclaimed for thirty years and apparently abandoned was upheld. But, the validity of the statute as applied to national banks was not discussed or decided. Apparently the Dollar Savings Bank was a state banking institution.

Other constitutional objections made to Chapter 161, Public Acts 1939, need not be noticed, because it is our opinion that the Act is invalid as applied to national banks for the reasons above stated. The decree of the chancellor is affirmed.