## Anderson Nat. Bank et al. v. Reeves.

Dec. 18, 1942.

736

Chas. W. Milner and Leo T. Wolford for appellants.

Hubert Meredith, Attorney General, and A. E. Funk, Earl Wilson, and Vincent Goodlett, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming in part and reversing in part.

This appeal brings in question the correctness of a judgment holding valid certain parts of Chap. 79 of the Acts of 1940 (KRS 393.010 et seq.), as amended by Chap. 156 of the Acts of 1942, dealing with escheats and with the disposition of certain classes of property declared to be presumed abandoned. By the cross appeal it is sought to reverse the judgment in so far as it adjudged certain portions of the same Acts invalid.

By sections 3 to 6 of the Act inclusive (KRS sections 393.020, 393.030, 393.040 and 393.050) certain classes of property are made subject to escheat and it is made the duty of the Commissioner of Revenue to institute proceedings to vest title to such property in the Commonwealth, the procedure to be in accordance with the Civil Code. Where title to such property is vested in the Commonwealth pursuant to such proceedings, any person claiming an interest therein, and who was not actually served with notice and did not appear in the proceedings, may within five years after the judgment file his claim with the Department of Revenue. Appropriate procedure is provided for the prosecution of such claims and right of appeal is given to the Franklin Circuit Court and to this court. These portions of the Act are not in controversy although it is suggested by appellants that the entire Act should be declared invalid. They are mentioned, however, for the purpose of giving a general idea as to the scope of the Act.

So far as material to this controversy, section 7 of the Act (KRS 393.060 and 393.070) provides in substance:

1) That where the owner of bank deposits payable on demand has not for ten successive years next preceding the date for making reports as required by the Act (a) negotiated in writing with the bank or trust company concerning it, or (b) been credited with interest on the pass book or certificate of deposit on his request, or (c) had a transfer, distribution of interest, or other transaction noted of record in the books or records of the bank or trust company, or (d) increased or decreased the amount of deposit, such deposits shall be presumed abandoned.

2) The same presumption of abandonment arises with respect to deposits not payable on demand except that the period of time is twenty five years instead of ten.

Section 8 (KRS 393.110) provides in substance that all persons holding property declared to be presumed abandoned must report same to the Department of Revenue annually as of July 1, the report being due on or before September 1 of each year. A copy of the report is required to be posted on the courthouse door or bulletin board on or before October 1 and it is provided that

such publication ''shall be constructive notice to all interested parties and shall be in addition to any other notice provided by statute or existing as a matter of law.'' The person reporting the property is required to turn it over to the Department of Revenue between November 1 and November 15 except that ''if the person making the report or the owner of the property shall certify to the department by sworn statement that any or all of the statutory conditions necessary to create a presumption of abandonment no longer exists or never did exist, or shall certify the existence of any fact or circumstance which has a substantial tendency to rebut such presumption, then, the person reporting or holding the property shall not be required to turn the property over to the department except on order of court. * * * The person reporting or holding the property or any claimant thereof shall always have the right to a judicial determination of his rights under this Act and nothing therein shall be construed otherwise; and the Commonwealth may institute an action to recover such property as is presumed abandoned whether it has been reported or not * * *.''

Section 17 (KRS 393.250) provides that all monies received by the Department of Revenue under the provisions of the Act must be deposited with the State Treasurer and credited to the account of the General Expenditure Fund.

Section 11 (KRS 393.140) provides that any person claiming an interest in any property turned over to the state on the ground that it was presumed abandoned (provided it was not subsequently adjudged to have been actually abandoned) may claim it ''at any time after same was paid to this Commonwealth''; and, even where actual abandonment was adjudged subsequent to payment to the state, any person claiming an interest, who was not actually served with notice and who did not appear, and whose claim was not considered during the proceedings, may within five years after the judgment file his claim with the Department.

Section 12 (KRS 393.150) provides that if a claimant establishes his right to property presumed abandoned the Commissioner of Revenue must authorize payment to him of a sum ''equal to the amount [which was] paid in to the State Treasury in compliance with this Act.''

The claimant is required to publish notice of his claim, within fifteen days after filing it, in a newspaper in the county in which the property was held before being transferred to the Commonwealth.

Section 10 (KRS 393.130) provides:

"Any person who transfers to the department property to which the state is entitled under this chapter shall be relieved of any liability to the owner arising from that transfer. The state shall reimburse any person who cannot be relieved of such liability by this section for all liability to the owner of the property or estate or damage incurred by reason of compliance with this chapter."

Section 16 (KRS 393.230) provides that if any one refuses to pay or surrender property presumed abandoned to the Department as required by the Act, an equitable proceeding may be brought on relation of the Commissioner to force payment or surrender. It is further provided that if property is turned over to the Department on presumption of abandonment the Commissioner may at any subsequent time institute proceedings to establish conclusively that it was *actually* abandoned, or that the owner has died and there is no person entitled to it. It is also provided in this section that all actions mentioned under the Act shall be filed as equity actions and follow the procedure provided by the Civil Code of Practice, unless otherwise provided.

This action was filed under the Declaratory Judgment Act by the Anderson National Bank, suing on behalf of itself and all others similarly situated and on behalf of depositors in banks, to test the validity of the Act and an injunction was sought to prevent the appellees from enforcing it—the appellees do not question the right of appellants to challenge the validity of the Act in the representative status assumed.

The trial court adjudged that the part of the Act requiring a voluntary delivery of the property to the state was unconstitutional because of the absence of provision for adequate notice to the owners of the property. Accordingly, the appellees were enjoined from insisting on or accepting a delivery of property presumed abandoned without first filing a suit and procuring a judgment for delivery thereof. It was adjudged that the

Act was valid in so far as it required reports of property presumed abandoned and in so far as it authorized the filing of actions to compel the surrender of property declared to be presumed abandoned. Accordingly, the trial court declined to enjoin appellees from requiring reports of property presumed abandoned and also declined to enjoin appellees from filing suits to recover property presumed abandoned, whether reported or not.

Appellants question the correctness of the judgment in holding the indicated portions of the Act valid and the appellees, by cross appeal, seek a reversal of the judgment in so far as it holds any part of the Act unconstitutional or enjoins enforcement thereof.

Appellants advance the proposition 1) that the provisions of the Act requiring delivery to the State of deposits declared to be presumed abandoned constitute, in effect, an attempted escheat of such deposits, which is invalid because of the absence of notice and judicial determination, 2) that even if valid as to deposits made subsequent to the Act such provisions are ineffective as to prior deposits because, when so applied, such provisions impair the obligation of the contract of deposit, and 3) that in any event such provisions, even though valid as to state banks, are invalid as to national banks. These propositions will be considered in the order named.

Appellants' brief contains an elaborate and scholarly treatise on the origin, history and purposes of prior escheat laws of this state as a basis for their argument that the Act is unconstitutional in so far as it requires a delivery to the state of deposits declared to be presumed abandoned without a judicial determination to that effect made after adequate notice. And, were we dealing with an out and out escheat act, their argument would be most persuasive—we would unhesitatingly say that there can be no escheat except pursuant to judicial determination made after legal notice.

But such is not the case, notwithstanding appellants' vehement insistence to the contrary and notwithstanding the fact that the title of the Act recites that it relates to property actually or presumptively subject to escheat. Certain parts of the Act, as indicated above, do relate to out and out escheat, but before *title* can become vested in the state judicial determination is necessary and such determination must be made after adequate notice since

the proceedings are required to be according to the Civil Code.

But the portions of the Act dealing with dormant bank deposits do not provide for a seizure of the deposits and vesting of title or ownership in the state but merely for a transfer of property which may later be adjudged to be subject to escheat, and these provisions are for the benefit and protection of both the depositors and the state. As said by the Supreme Court in Provident Institution for Savings v. Malone, 221 U. S. 660, 31 S. Ct. 661, 663, 55 L. Ed. 899, 31 L. R. A., N. S., 1129, in discussing a somewhat similar statute, "the statute proceeds on the general principle that corporations may become involved, or may be dissolved; or that, after long lapses of time, changes may occur which would require someone to look after the rights of the depositor. The statute deals with accounts of an absent owner, who has so long failed to exercise any act or ownership as to raise the presumption that he has abandoned his property. And if abandoned, it should be preserved until he or his representative appear to claim it; or, failing that, until it should be escheated to the state. The right and power so to legislate is undoubted."

The good faith of the Legislature cannot be questioned and it is to be assumed that the Act was for the protection of the depositors as well as for the benefit of the state. That this is a justifiable assumption is clearly revealed in the provision giving the depositor (and this, of course, includes his legal representatives) the right, without limit of time, to make a claim and receive a return of the deposit provided there has not been a judicial determination of actual abandonment—and even after such judicial determination five years is given for the same purpose to any person who was not actually served with notice and did not appear in the proceedings.

In this respect both the rights of the depositor and the bank are fully protected by giving to the depositor a right of action against the state, which is conclusively presumed always to be able to pay, and by the provision relieving the bank of liability to the depositor upon compliance with the Act, fortified by the further provision for reimbursement to the bank by the state for any liability incurred by reason of compliance with the Act. The mere taking away of the depositor's right of action

against the bank constitutes no substantial deprivation of property when, in lieu thereof, he is afforded an action against the Commonwealth, the most perfect of all protection.

Nor does the requirement that the owner making claim must publish notice of his claim in a newspaper within fifteen days after filing it impose such a burden as to constitute a substantial deprivation. This is a reasonable requirement and is for the benefit of depositors whose deposits have been turned over to the state. Publicity is thus given to such claims in order that the true owners may be put on notice if a false claim is made.

It is our conclusion that the controversial portions of the Act are reasonable (as to the time provided as well as to the procedure) and that they would not constitute a deprivation of property without due process of law in violation of the Constitution of the United States even in the absence of the provision requiring notice to be posted at the courthouse door. Accordingly, it becomes unnecessary to discuss the sufficiency of such notice.

The conclusion we have reached is fully supported by Commonwealth of Pennsylvania v. Dollar Savings Bank, 259 Pa. 138, 102 A. 569, 1 A. L. R. 1048; State v. Security Sav. Bank, Cal. App., 154 P. 1070; Provident Institution for Savings v. Malone, supra, and Brookline Borough Gas Co. v. Bennett, 154 Misc. 106, 277 N. Y. S. 203. The latter case upheld a similar act dealing with consumer deposits with utility companies (a class of property within the purview of the presumptive abandonment provision of the act in question), but the legal questions involved were identical with ones confronting us here.

It is the contention of appellants that even though the Act be held valid it can apply only to deposits made after its effective date since its application to deposits made prior thereto would result in impairment of the contract between the depositor and the bank in violation of section 19 of the Constitution of Kentucky which prohibits the enactment of any law impairing the obligation of contracts. It is not argued that such application of the Act would result in violation of the contract clause of the Federal Constitution since this question

was laid to rest by the Supreme Court in Provident Institution for Savings v. Malone, supra and Security Sav. Bank v. California, 263 U. S. 282, 44 S. Ct. 108, 68 L. Ed. 301, 306, 31 A. L. R. 391, wherein it was held that such statutes are not violative of the contract clause. These decisions are binding on us as to the federal question but not on the question of application of the Constitution of this state. Glenn et al. v. Field Packing Co., 290 U. S. 177, 54 S. Ct. 138, 78 L. Ed. 252.

In support of their contention appellants rely on Bank of Louisville v. Board of Trustees of Public Schools, 83 Ky. 219, 5 S. W. 735, and Louisville School Board v. Bank of Kentucky, 86 Ky. 150, 5 S. W. 739. In each of these cases the statutes in question attempted to vest in the school board title to bank deposits of persons who were absent from the state for eight years and who had not exercised any control over the deposits during that time. It was provided that the school board should be liable to the owner of the deposit, if he should later claim it, *but that no such liability should attach to the state.* In each case it was held that the deposit created a contract between the depositor and the bank by which the latter acquired the right to retain, use and control the money until it was returned to the depositor on his demand and that the statutes were void because they impaired the obligation of the contract from the standpoint of both the bank and the depositor.

A careful analysis of those opinions reveals, however, that the underlying basis of the court's conclusion was the absence of perfect protection to the depositor and the bank. The opinion in the former case, on which the latter is based, is threaded through with comments on the failure of the statute to give the depositor, in lieu of his right of action against the bank, the substantial remedy of looking to the state for reimbursement and on its failure to give the bank any substantial remedy since it was left with no remedy except that of looking to the school board for reimbursement in the event it was compelled to account for the deposits. It is doubtful, to say the least, that the court would have reached the conclusion it did had the statute afforded to both a depositor and the bank the same perfect protection as that afforded by the Act here involved.

In any event, we think the correct conclusion was reached by the Supreme Court in the two cases referred

to. It seems so clear as to require little discussion that there is no substantial impairment of the contract from the depositor's standpoint since his deposit is returnable to him by the state at any time he files a claim therefor. The argument as to impairment of the contract from the bank's standpoint was effectively answered by the Supreme Court in Security Sav. Bank v. California, supra, in these words:

"The contract of deposit does not give the banks a tontine right to retain the money in the event that it is not called for by the depositor. It gives the bank merely the right to use the depositor's money until called for by him or some other person duly authorized. If the deposit is turned over to the state in obedience to a valid law, the obligation of the bank to the depositor is discharged." [263 U. S. 282, 44 S. Ct. 110, 68 L. Ed. 301, 31 A. L. R. 391.]

It is our conclusion that the parts of the Act requiring a delivery of deposits declared to be presumed abandoned to the Department of Revenue are valid in their application to deposits made both prior and subsequent to the effective date of the Act.

There is little appeal in the insistence of appellants that if the strict letter of the decisions in Bank of Louisville v. Board of Trustees of Public Schools and Louisville School Board v. Bank of Kentucky, supra, is not followed our decision should be made prospective in accord with the policy adopted in Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321, of affording protection to those who have acted in reliance on opinions of this court and whose rights might be adversely affected by a change of decision, since, as indicated above, no substantial impairment of any right of either depositors or banks is effected by the Act.

The question of validity of the Act as applied to national banks must be approached in the light of the limitations applicable to state legislation affecting such institutions. National banks are amenable to state laws as are other institutions if such laws do not interfere with their functions in such manner as to conflict with the general objects and purposes of the National Banking Act. First National Bank of Elizabethtown v. Com., 143 Ky. 816, 137 S. W. 518, 34 L. R. A., N. S., 54 Ann. Cas. 1912D, 378; Commonwealth v. Clark County Nat.

Bank, 187 Ky. 151, 219 S. W. 175; McClellan v. Chipman, 164 U. S. 347, 17 S. Ct. 85, 41 L. Ed. 461; First National Bank of San Jose v. California, 262 U. S .366, 43 S. Ct. 602, 67 L. Ed. 1030. The burden placed on national banks of making the report of such deposits as the Act declares to be presumed abandoned is not an unwarranted interference. Waite v. Dowley, 94 U. S. 527, 24 L. Ed. 181. But, as said in First National Bank of San Jose v. California, supra, "any attempt by a state to define their duties or control the conduct of their affairs is void, whenever it conflicts with the laws of the United States or frustrates the purposes of the national legislation, or impairs the efficiency of the bank to discharge the duties for which it was created. Davis v. Elmira Sav. Bank, 161 U. S. 275, 283, 288, 290, 16 S. Ct. 502, 40 L. Ed. 700." [282 U. S. 366, 43 S. Ct. 603, 67 L. Ed. 1030.]

Appellants insist that the case just quoted from is conclusive as to the invalidity of the Act in its application to national banks. In that case was involved the validity of California statutes as so applied. The statutes declared that deposits in banks to the credit of depositors who for more than twenty years had not made a deposit or withdrawn any part of the deposit, and where neither the depositor nor any claimant had filed any notice with the bank showing his present residence, should *escheat* to the state. The court, in commenting on the opinion of the Supreme Court of California, State v. Anglo & London Paris. Nat. Bank of San Francisco, 186 Cal. 746, 200 P. 612, affirming a judgment directing the payment of such deposits to the state, pointed out that the California court had declined to express an opinion as to whether the judgment operated as a present escheat of the rights of the depositor or whether the depositor still had the right to prosecute an action to obtain payment of the deposit from the state. Therefore, in discussing the case, the Supreme Court treated the California statutes as statutes of escheat or confiscation and held them void as being a regulation of national banks to such an extent as to tend to frustrate the purposes and objects of national legislation with respect to such banks. This was the reason the California statutes were held to be invalid as to national banks and not, as suggested by appellees, the fact that the statutes impaired the obligation of the contract of deposit. Analysis of the opinion reveals, however, that the only undue in-

terference of the statutes with national banks was embodied in one sentence of the opinion as follows:

> "The success of almost all commercial banks depends upon their ability to obtain loans from depositors, and these might well hesitate to subject their funds to possible confiscation."

Thus it seems that the California statutes were held invalid as to national banks because they were deemed by the court to be *escheat* statutes confiscating the deposits solely by reason of *dormancy*. The comment of the court on the failure of the California court to express an opinion on the right of the depositor to secure a return of the deposit is significant. Thus, while this case unquestionably decided that the California statutes were invalid as to national banks, and while this decision was reaffirmed as to the particular California statutes in the later case of Security Sav. Bank v. California, supra, we do not feel that it is controlling as to the act in controversy since the Act differs from the California statutes in that no escheat is declared by reason of mere dormancy—the Act is one pursuant to which mere custody, as distinguished from title, is vested in the state by reason of dormancy and is not one of confiscation having the tendency to cause depositors to hesitate to make deposits in national banks. And, since the confiscatory feature, which the Supreme Court had in mind as being the feature of the California statutes which tended to bring about an undue interference with national banks, is absent from the present Act, it does not appear to us that the case is controlling of the question now presented.

It is true that the Supreme Court of Tennesse in American National Bank of Nashville v. Clarke, Supt. of Banks, 175 Tenn. 480, 135 S. W. (2d) 935, and the United States Circuit Court of Appeals for the Sixth Circuit in Starr, Atty. Gen., v. O'Connor, Comptroller, et al., 118 F.(2d) 548, 557, relying on the authority of the case under discussion, held somewhat similar statutes of Tennessee and Michigan invalid as to national banks, but it seems to us that those cases fail to give full consideration to the fact that the Supreme Court pointed out that the undue interference of the California statutes with national banks was brought about by the confiscatory nature of the statutes in providing out and out escheat by reason of mere dormancy. It is significant, though, that the opinion in the Sixth Circuit case did.

touch lightly on this aspect of the San Jose Bank case as is revealed by the remark that "the Michigan statutes resemble the invalid California Act in being closer kin to illegitimate laws of forfeiture than to legitimate laws of escheat."

Since the act in controversy does not provide for an escheat of deposits by reason of mere dormancy, as did the California statutes (title being vested in the state only after judicial determination of *actual* abandonment), and since the depositor may at any time before actual abandonment is adjudged (and five years thereafter if he was not served with actual notice) secure a return of his deposit from the state, it is our opinion that the Act has no tendency to cause depositors to hesitate on account of apprehended fear of confiscation to make deposits in national banks. This being true, there is no unwarranted interference with such banks and no frustration of the purposes of national legislation concerning them such as to render the Act invalid as to them.

The judgment is affirmed on the original appeal and reversed on the cross appeal with directions to enter a judgment in conformity with this opinion. An order having been entered in this court suspending the operation of the Act during the pendency of the appeal, the circuit court will, on return of the case to that court, fix a date for compliance with the Act, giving a reasonable time for that purpose.

Whole court sitting except Judge Rees.