ANDERSON NATIONAL BANK ET AL. *v.* LUCKETT,
COMMISSIONER OF REVENUE, ET AL.

No. 154.   Argued February 2, 1944.—Decided February 28, 1944.

*Messrs. Wm. Marshall Bullitt* and *Charles W. Milner* (*Mr. Leo T. Wolford* was with the latter on the brief) for appellants.

*Mr. Earl S. Wilson,* Assistant Attorney General of Kentucky, with whom *Messrs. M. B. Holifield* and *A. E. Funk,* Assistant Attorneys General, were on the brief, for appellees.

By special leave of Court, *Mr. Clarence A. Linn,* Deputy Attorney General, with whom *Mr. Robert W. Kenny,* Attorney General, was on the brief, for the State of California, as *amicus curiae,* urging affirmance.

*Messrs. John F. Anderson* and *Trevor V. Roberts,* on behalf of the Comptroller of the Currency of the United States; *Messrs. Herbert W. Clark, Roland C. Foerster,* and *Edward Hohfeld,* on behalf of the California Bankers Association; and *Messrs. J. B. Faegre* and *Hayner N. Larson,* on behalf of the Northwestern National Bank of Minneapolis et al., filed briefs, as *amici curiae,* urging reversal. *Messrs. J. A. A. Burnquist,* Attorney General, and *Wm. C. Green,* Assistant Attorney General, on behalf of the State

of Minnesota (*Mr. John E. Martin,* Attorney General, joining with them on behalf of the State of Wisconsin), and *Mr. Herbert J. Rushton,* Attorney General, on behalf of the State of Michigan, filed briefs, as *amici curiae,* urging affirmance.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Under Kentucky Revised Statutes of 1942, ch. 393, §§ 393.060 *et seq.,* every bank or trust company in the state is required to turn over to the state, deposits which have remained inactive and unclaimed for specified periods. The questions for decision are: (1) whether the statute under which the state purports to acquire the right to demand custody of the deposits, affords due process of law, even though the depositors may not receive personal notice of the pending transfer and there may be no prior judicial proceedings, and (2) whether the statute, as applied to deposits in a national bank, conflicts with the national banking laws or is an unconstitutional interference by the state with appellant's operations as a banking instrumentality of the United States.

So far as here relevant, the provisions of the statute may be summarily stated as follows. Demand deposits held by a bank, with accrued interest, are presumed abandoned unless the owner has, within ten years preceding the date for making the report required by § 393.110, negotiated in writing with the bank, or been credited with interest on his passbook at his request, or had a transaction noted upon the books of the bank, or increased or decreased the amount of his deposit (§ 393.060). Non-demand deposits, with accrued interest, are likewise presumed abandoned, unless the owner, within the twenty-five years preceding the report, has taken one or more of such enumerated actions (§ 393.070).

The holder of property presumed abandoned, including any national bank, is required to file with the state Department of Revenue, annually before September 1, a report in duplicate of such property as of the preceding July 1; the copy is sent to the sheriff of the county in which the property is located, and he is under the statutory duty of posting the copy on the court house door or bulletin board, before the following October 1 (§ 393.110 (1)). The holder is required to turn over to the Department of Revenue before November 15, the property so reported, unless the holder or owner certifies facts to rebut the presumption of abandonment, or unless the statute of limitations has run as between the owner and the holder. In neither such case need the holder turn over the property except upon an order of court. If a claimant has filed an action with respect to any such property, the holder is required to notify the Department of the pendency of the action but is not required to turn over the property during its pendency. (§ 393.110 (2).) In any case the holder of such property is entitled to a judicial determination of his rights, under § 393.160, providing for appeals from the decisions of the Commissioner of Revenue, or under § 393.230, providing for an equitable action by the Commissioner to compel the surrender of such property (§ 393.110 (3)).

A person refusing to turn over property under this statute is subject to a penalty of 10% of its amount, but not to exceed $500; he is subject to no penalty, however, if he posts a compliance bond (§ 393.290). Any person who transfers property to the state under this statute is relieved of liability to the owner, and the state is required to reimburse the holder for any such liability (§ 393.130).

The Commissioner may institute judicial proceedings to establish conclusively that property, in his hands be-

cause presumed abandoned, is actually abandoned, or that the owner of the property has died and that there is no person entitled to it (§ 393.230 (2)). In such an action the procedure is governed by the Kentucky Civil Code of Practice (§ 393.240 (2)).

A claim to property surrendered to the state may be made at any time, unless the property has been judicially determined, under § 393.230, to have been actually abandoned, in which case any claim to the property by a person not actually served with notice and who did not appear and whose claim was not considered during the proceeding, must be made within five years of the judicial determination (§ 393.140 (1) and (2); and see *Anderson National Bank* v. *Reeves*, 293 Ky. 735, 738, 741, 170 S. W. 2d 350). The claimant is required to make publication of his claim in a newspaper of general circulation in the county, or if there is none, he is required to post his claim at the court house door and at three other conspicuous places in the county (§ 393.140 (3)). The Commissioner of Revenue is directed to consider and determine the validity of any claim and any defense; if he approves the claim, he must authorize its payment (§ 393.150). Judicial review of his determination in the appropriate state courts is provided (§ 393.160).

The statute thus sets up a comprehensive scheme for the administration of abandoned bank deposits. Upon a report by the bank and notice to the depositors and with an opportunity to be heard, if either wish it, the state takes into its protective custody bank accounts which, having been inactive for at least ten years if demand accounts, or at least twenty-five years if non-demand, the statute declares to be presumptively abandoned. The bank is relieved of its liability to the depositors, who receive instead a claim against the state, enforcible at any time until the deposits are judicially found to be abandoned in fact and

for five years thereafter. Refusal by the designated state officer to make payment is reviewable by the state courts.

Appellant, a national banking association organized under the laws of the United States, brought the present suit in the Circuit Court of Kentucky for Franklin County. The bill of complaint, filed by appellant on behalf of itself and all others similarly situated, sought to enjoin appellees, the state Commissioner of Revenue and other state officers, from enforcing the statute here in question. The Circuit Court held invalid so much of the challenged statute as requires the payment of deposits to the state merely on the prescribed notice, and without the order or judgment of a court of competent jurisdiction. It gave judgment perpetually enjoining appellees from enforcing such parts of the statute. The Kentucky Court of Appeals sustained the Act in its entirety, holding that it affords due process, and that it neither infringes the national banking laws nor is a prohibited interference with a banking instrumentality of the United States. It accordingly reversed the judgment of the Circuit Court, and instructed it to deny an injunction. 293 Ky. 735. On remand, the Circuit Court entered its judgment, dismissing the bill. The Court of Appeals affirmed. 294 Ky. 674, 172 S. W. 2d 575. The case comes here on appeal under § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a).

Appellant contends here: (1) that the statute, in requiring payment of the deposit accounts to the state on the prescribed notice, without recourse to judicial proceedings or any court order or judgment, deprives the depositors and appellant of property without due process of law, and (2) that such withdrawal of accounts from a national bank infringes the national banking laws, particularly R. S. § 5136, 12 U. S. C. § 24, which authorize national banks to accept deposits and to do a banking business, and is an unconstitutional interference with the

federally authorized function of national banks as instrumentalities of the Federal Government.

## I.

Appellant argues that the statute deprives both the bank and the depositors of their property rights in the bank accounts, and contends that the procedure by which the state acquires its asserted right to demand payment of the accounts is so lacking in notice to depositors and in an opportunity for them to be heard as to deny the state the right to assert the depositors' claims and afford to the bank no protection if it responds to the state's demand for payment of the accounts.

While the Kentucky statute is entitled "Escheats," its provisions, so far as applicable to bank deposits, are concerned only with personal property deemed abandoned. At common law, abandoned personal property was not the subject of escheat, but was subject only to the right of appropriation by the sovereign as *bona vacantia*. See 7 Holdsworth, A History of English Law (2d ed.) 495–496. Like rights of appropriation, except so far as limited by state law and the Fourteenth Amendment, exist in the several states of the United States. *Hamilton* v. *Brown*, 161 U. S. 256; *Christianson* v. *King County*, 239 U. S. 356; *Security Bank* v. *California*, 263 U. S. 282; *United States* v. *Klein*, 303 U. S. 276.

Apart from questions which may arise under the national banking laws in the case of national banks, it is no longer open to doubt that a state, by a procedure satisfying constitutional requirements, may compel surrender to it of deposit balances, when there is substantial ground for belief that they have been abandoned or forgotten, *Security Bank* v. *California, supra,* certainly when the state acquires them subject to all lawful demands of the depositors. *Provident Savings Institution* v. *Malone*, 221 U. S. 660.

The deposits are debtor obligations of the bank, incurred and to be performed in the state where the bank is located, and hence are subject to the state's dominion. See *Security Bank* v. *California, supra,* 285 and cases cited; *Irving Trust Co.* v. *Day,* 314 U. S. 556, 562. And it is within the constitutional power of the state to protect the interests of depositors from the risks which attend long neglected accounts, by taking them into custody when they have been inactive so long as to be presumptively abandoned, see *Provident Savings Institution* v. *Malone, supra,* 664, just as it may provide for the administration of the property of a missing person. *Cunnius* v. *Reading School District,* 198 U. S. 458; *Blinn* v. *Nelson,* 222 U. S. 1.

With respect to the statutory rebuttable presumption of abandonment of demand deposits after inactivity of ten years and of non-demand deposits after inactivity of twenty-five years, we are unable to say that the legislative determination is without support in experience. We have sustained like statutory presumptions that shorter periods of inactivity furnish the basis for state administration of unasserted claims or demands. See *Security Bank* v. *California, supra; Cunnius* v. *Reading School District, supra; Blinn* v. *Nelson, supra;* cf. *Provident Savings Institution* v. *Malone, supra.*

In the present posture of the case we conclude, subject to the requirements of procedural due process, that prior to a judicial decree of actual abandonment, the depositors will not be deprived of their property by the surrender of their bank accounts to the state. We need not decide whether the procedure for determining abandonment in fact conforms to due process, for appellant has not attacked this procedure here and no such proceeding is before us. Prior to such a decree the present statute merely compels the summary substitution of the state for the bank, as the debtor of the depositors. It deprives

the depositors of none of their rights as creditors, preserving their right to demand from the state payment of the deposits, and their right to resort to the courts if payment is refused. True, payment over of the deposits to the state may be the precursor of a decree of abandonment and the shortening of the period within which a claimant may demand payment of his deposit. But, if the notice to depositors is adequate, we cannot say that the period of five years allowed for that purpose after the decree, is an infringement of constitutional rights. *Terry* v. *Anderson,* 95 U. S. 628, 632–633, and cases cited; *United States* v. *Morena,* 245 U. S. 392, 397.

Appellant and the Comptroller of the Currency, as *amicus curiae,* point to the formalities with which the depositors must comply before they will be able to recover their deposits, and argue that the state *may* be less solvent or less willing to pay than the bank. In the absence of some persuasive showing, which is lacking here, that these formalities will be more onerous than those which would or could be properly required by the bank, or that the state *will* in fact be less able or less willing to pay, it cannot be assumed that the mere substitution of the state as the debtor will deprive the depositors of their property, or impose on them an unconstitutional burden. See *Dohany* v. *Rogers,* 281 U. S. 362, 366–368; cf. *Blinn* v. *Nelson, supra,* 7; *Corn Exchange Bank* v. *Coler,* 280 U. S. 218, 223. In the absence of a showing of injury, actual or threatened, there can be no constitutional argument. *In re 620 Church St. Corp.,* 299 U. S. 24, 27, and cases cited.

Since the bank is a debtor to its depositors, it can interpose no due process or contract clause objection to payment of the claimed deposits to the state, if the state is lawfully entitled to demand payment, for in that case payment of the debt to the state, under the statute, relieves the bank of its liability to the depositors. *Security Bank* v. *California, supra,* 285, 286. But if the statute

is deficient in its provisions for notice and opportunity for hearing so that the depositors would not be bound by any proceedings taken under it, the bank would be entitled to raise the question whether its obligation to the depositors would be discharged by payment of the deposits to the state. Hence our inquiry must be directed to the question whether the procedure by which the state undertakes to acquire the depositors' right to demand payment of the deposits was upon adequate notice to them and opportunity for them to be heard.

As we have said, the statute provides for notice to the depositors by requiring the sheriff to post on the court house door or bulletin board a copy of the bank's report of deposits presumed abandoned. We think that this, in conjunction with the notice provided by the statute itself and by the taking of possession of the bank balances by the state, is sufficient notice to the depositors to satisfy all requirements of due process.

The statute itself is notice to all depositors of banks within the state, of the conditions on which the balances of inactive accounts will be deemed presumptively abandoned, and their surrender to the state compelled. All persons having property located within a state and subject to its dominion must take note of its statutes affecting the control or disposition of such property and of the procedure which they set up for those purposes. *Reetz* v. *Michigan*, 188 U. S. 505, 509; *North Laramie Land Co.* v. *Hoffman*, 268 U. S. 276, 283. Proceedings for the assessment of taxes, the condemnation of land, the establishment of highways and public improvements affecting land owners, are familiar examples. *Huling* v. *Kaw Valley Co.*, 130 U. S. 559, 563–564; *Ballard* v. *Hunter*, 204 U. S. 241, 254–257, 262.

The report of the bank, required to be posted on the court house door or bulletin board, lists the abandoned accounts as defined by the statute and thus gives notice

to the owners of all those accounts which, because of their inactivity for the periods and in the ways specified by the statute, are deemed abandoned and required to be paid to the state. This notice, when read in the light of the knowledge of the statute, with which all persons having such bank accounts within the state are chargeable, is sufficient to advise that the listed accounts are deemed presumptively abandoned and will at the end of six weeks from the date of filing be paid over to the state, and that both before and after that event the depositors will be afforded opportunity to present their claims and to have them judicially determined, if rejected.

Posting on the court house door as a method of giving notice of proceedings affecting property within the county, is an ancient one and is time-honored in Kentucky. The Act of the Kentucky legislature of December 19, 1796, provided in § 2 for the use of this method of warning absent defendants in equity proceedings that a decree would be entered against them, if they did not appear. This means of giving notice was employed in the escheat statutes of Kentucky at least as early as 1852. Kentucky Revised Statutes of 1852, p. 308, c. 34, Art. IV, § 3 (1). The fact that a procedure is so old as to have become customary and well known in the community is of great weight in determining whether it conforms to due process, for "Not lightly vacated is the verdict of quiescent years." *Coler* v. *Corn Exchange Bank,* 250 N. Y. 136, 141, 164 N. E. 882, aff'd, *sub nom. Corn Exchange Bank* v. *Coler, supra.* To that effect, see *Otis Co.* v. *Ludlow Mfg. Co.,* 201 U. S. 140, 154; *Ownbey* v. *Morgan,* 256 U. S. 94, 108–109, 112; *Jackman* v. *Rosenbaum Co.,* 260 U. S. 22, 31; *Corn Exchange Bank* v. *Coler, supra,* 222–223; *Snyder* v. *Massachusetts,* 291 U. S. 97, 110–111.

We cannot say that the posting of a notice on the door of the court house in a Kentucky county is a less efficacious method of giving notice to depositors in banks of the

county than publication in a local newspaper, or that in the circumstances of this case it is an inadequate means of giving notice of the summary taking into custody of the designated bank accounts by the state. This is the more so because in this case the notice is the immediate prelude to and accompanies the compulsory surrender of the bank balances to the state, unless the depositors in the meantime intervene as claimants. The statutory procedure, so far as it affects depositors, is in the nature of a proceeding in rem, in the course of which property, against which a claim is asserted, is seized or sequestered, and held subject to the appearance and presentation of claims by all those who assert an adverse interest in it. In all such proceedings the seizure of the property is in itself a form of notice of the claim asserted, to those who may claim an interest in the property. See *Corn Exchange Bank* v. *Coler, supra,* holding constitutional a statute providing for no notice to the owner of a bank deposit other than its seizure.

*Security Bank* v. *California, supra,* was a proceeding to compel the bank to pay over to the state inactive bank accounts as the first step in their sequestration and, if unclaimed, their possible ultimate escheat. The Court held, 263 U. S. at 289–290, that publication of notice of the proceeding in a newspaper at the state capital was sufficient notice to absent depositors to meet due process requirements. It supported this conclusion by reference to the proceeding against the bank by which it was required to pay over the deposits to the state "as *in personam* so far as concerns the bank; as *quasi in rem* so far as concerns the depositors," 263 U. S. at p. 287. Since the service of process on the bank personally was equivalent to a seizure of the accounts, it was deemed to supplement the publication as an independent notice, in itself, to the depositors of the seizure and of their opportunity given by the statute to appear and assert their claims against the state.

Like procedure, begun by the seizure or acquisition of control of a res, including, in some cases, choses in actions, has been sustained as affording adequate notice to absent claimants in escheat proceedings, *Hamilton* v. *Brown, supra; Christianson* v. *King County, supra,* 373; in garnishment proceedings, *Harris* v. *Balk,* 198 U. S. 215, 223; in proceedings for the administration of a debt due an absentee, *Cunnius* v. *Reading School District, supra;* in proceedings begun by attachment, *Cooper* v. *Reynolds,* 10 Wall. 308; and in admiralty proceedings, *The Mary,* 9 Cranch 126, 144.

We cannot say, nor does appellant seriously urge, that the length of notice by posting, six weeks, is inadequate. Three weeks notice by publication of the condemnation of the land for a public highway was held sufficient by this Court in *North Laramie Land Co.* v. *Hoffman, supra;* and thirty days was deemed sufficient in a like proceeding in *Huling* v. *Kaw Valley Co., supra.*

What is due process in a procedure affecting property interests must be determined by taking into account the purposes of the procedure and its effect upon the rights asserted and all other circumstances which may render the proceeding appropriate to the nature of the case. *Davidson* v. *New Orleans,* 96 U. S. 97, 107–108; *Ballard* v. *Hunter, supra,* 255; *North Laramie Land Co.* v. *Hoffman, supra,* 282–283; *Dohany* v. *Rogers, supra,* 369, and cases cited. The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked. If that is preserved, the demands of due process are fulfilled. Measured by this standard, we cannot say that the present notice is insufficient.

For this reason also it is not an indispensable requirement of due process that every procedure affecting the ownership or disposition of property be exclusively by judicial proceeding. Statutory proceedings affecting

property rights, which, by later resort to the courts, secure to adverse parties an opportunity to be heard, suitable to the occasion, do not deny due process. Familiar examples are the decisions and orders of administrative agencies which determine rights subject to a subsequent judicial review. And such is obviously the case here, where there is full opportunity to the depositors to be heard by the State Commissioner, whose decision is subject to court review. It is difficult to see what right here asserted would have been better preserved by a court procedure whose end was the compulsory surrender of the deposit balances by the bank to the state, which takes subject to the claims of the depositors.

The mere fact that the state or its authorities acquire possession or control of property as a preliminary step to the judicial determination of asserted rights in the property is not a denial of due process. *Samuels* v. *McCurdy,* 267 U. S. 188, 200; *North Laramie Land Co.* v. *Hoffman, supra; Corn Exchange Bank* v. *Coler, supra; Phillips* v. *Commissioner,* 283 U. S. 589, 593–601, and cases cited.

We conclude that the procedural provisions of the Kentucky statute are adequate to meet all constitutional requirements, and that it does not deprive appellant or its depositors of property without due process of law.

## II.

We come now to appellant's second contention, that the Kentucky statute infringes the national banking laws and unconstitutionally interferes with appellant as an instrumentality of the federal government. But the statute does not discriminate against national banks, cf. *McCulloch* v. *Maryland,* 4 Wheat. 316, by directing payment to the state by state and national banks alike, of presumptively abandoned accounts. Nor do we find any word in the national banking laws which expressly or by implication conflicts with the provisions of the Kentucky

statutes. Cf. *Davis* v. *Elmira Savings Bank,* 161 U. S. 275.

This Court has often pointed out that national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions. *Waite* v. *Dowley,* 94 U. S. 527, 533; *First National Bank* v. *Missouri,* 263 U. S. 640, 656; *Lewis* v. *Fidelity Co.,* 292 U. S. 559, 566; *Jennings* v. *U. S. Fidelity & Guaranty Co.,* 294 U. S. 216, 219. Thus the mere fact that the depositor's account is in a national bank does not render it immune to attachment by the creditors of the depositor, as authorized by state law. Compare *Earle* v. *Pennsylvania,* 178 U. S. 449, with *Van Reed* v. *People's National Bank,* 198 U. S. 554.

As we have seen, a bank account is a chose in action of the depositor against the bank, which the latter is obligated to pay in accordance with the terms of the deposit. It is a part of the mass of property within the state whose transfer and devolution is subject to state control. *Security Bank* v. *California, supra,* 285, 286, and cases cited; *Irving Trust Co.* v. *Day, supra,* 562. It has never been suggested that non-discriminatory laws of this type are so burdensome as to be inapplicable to the accounts of depositors in national banks.

The statute here attacked does not purport to do more than does any other regulation of the devolution of bank accounts of missing persons, a function which is, as we have seen, within the competence of the state. Under the statute the state merely acquires the right to demand payment of the accounts in the place of the depositors. Upon payment of the deposits to the state, the bank's obligation is discharged. Something more than this is required to render the statute obnoxious to the federal banking laws. For an inseparable incident of a national bank's privilege of receiving deposits is its obligation to pay them to the persons entitled to demand payment ac-

cording to the law of the state where it does business. A demand for payment of an account by one entitled to make the demand does not infringe or interfere with any authorized function of the bank. In fact, inability to comply with such demands is made a basis in the national banking laws for closing the doors of the bank and winding up its affairs.

Appellant argues that if the present act is sustained, it will open the door to the exertion of unlimited state discretionary power over the deposits in national banks, and that the act imposes a burden on appellants such as was held to be inadmissible in *First National Bank* v. *California,* 262 U. S. 366, which was followed in *National City Bank* v. *Philippine Islands,* 302 U. S. 651. As we have seen, the only power sought to be exerted by the state over the depositors' accounts is the assertion of its lawfully acquired right to collect them, in accordance with the obligation, which was both assumed by appellant and is to be performed in conformity with the banking laws of the United States. In this respect the state's power to make such a demand cannot extend beyond its power under state law and the Federal Constitution to acquire control of deposit accounts from their owners. So long as it is thus limited, and the power is exercised only to demand payment of the accounts in the same way and to the same extent that the depositors could, we can perceive no danger of unlimited control by the state over the operations of national banking institutions. We need not decide whether, within the limit, the state's power over deposits in national banks is as simple as its like power over deposits in state banks. Compare *First National Bank* v. *California, supra,* with *Security Bank* v. *California, supra.* We are concerned only with the question whether the particular power here asserted is a forbidden encroachment upon the privileges of a national bank.

The decision of this Court in *First National Bank* v. *California, supra,* did not rest on any want of power of a state to demand of a national bank, payment of deposits which the state was lawfully entitled to receive. Decision there turned rather on the effect of the state statute in altering the contracts of deposit in a manner considered so unusual and so harsh in its application to depositors as to deter them from placing or keeping their funds in national banks. In that case the state brought a statutory proceeding in its courts to compel a national bank to pay over to it an inactive deposit account. The statute required "escheat to the state" of all balances in deposit accounts remaining unclaimed and inactive for more than twenty years, where neither the depositor nor any claimant had filed any notice with the bank showing his present address. It authorized suit in behalf of the state to recover such amounts and directed that judgment should be given for the state "if it be determined that the moneys deposited in any defendant bank or banks are unclaimed," for the period and in the manner specified by the statute. It will be noted that the statute required no proof that the forfeited accounts had been in fact abandoned, or that their owners were unknown or had died without heirs or surviving kin. Upon mere proof of dormancy for the prescribed period, the statute declared the accounts to be escheated to the state.

After pointing out that the state Supreme Court, in sustaining the judgment in the state's favor, had declined, as unnecessary to its decision, to express an opinion whether the absent depositors could reclaim their forfeited deposits from the state, this Court declared that the statute "attempts to qualify in an unusual way agreements between national banks and their customers long understood to arise when the former receive deposits under their plainly granted powers." 262 U. S. at p. 370.

And since it was thought that such alterations might be made by that and other states "and, instead of twenty years, varying limitations may be prescribed—three years perhaps, or five, or ten, or fifteen," the Court declared that the effect on the national banking system would be incompatible with the statutory purposes of establishing a system of national banks acting as federal instrumentalities. That effect it specifically described as follows (p. 370): "The depositors of a national bank often live in many different States and countries; and certainly it would not be an immaterial thing if the deposits of all were subject to seizure by the State where the bank happened to be located. The success of almost all commercial banks depends upon their ability to obtain loans from depositors, and these might well hesitate to subject their funds to possible confiscation."

The unusual alteration of depositors' accounts to which the Court referred was plainly the statutory declaration of escheat of depositors' accounts merely because of their dormancy for the specified period, without any determination of abandonment in fact. This it treated as in effect "confiscation" of depositors' accounts, operating as an effective deterrent to depositors' placing their funds in national banks doing business within the state.

We have no occasion to reconsider this decision, as appellees urge, for the grounds assigned for it are wholly wanting here. While the seizure and escheat or forfeiture for mere dormancy of a national bank account are unusual, the escheat or appropriation by the state of property in fact abandoned or without an owner is, as we have seen, as old as the common law itself. Here there is no escheat or forfeiture by reason of dormancy. Dormancy without more is made the statutory ground for the state's taking inactive bank accounts into its custody, the state assuming the bank's obligation to the depositors. And the deposits

need not be surrendered, if the depositors or the bank make it appear that abandonment has not occurred. This is not confiscation or even an attempted deprivation of property. Escheat or forfeiture to the state may follow, but only on proof of abandonment in fact. We cannot say that the protective custody of long inactive bank accounts, for which the Kentucky statute provides, and which in many circumstances may operate for the benefit and security of depositors, see *Provident Savings Institution* v. *Malone, supra,* 664, will deter them from placing their funds in national banks in that state. It cannot be said that it would have that effect, more than would the tax laws, the attachment laws, or the laws for the administration of estates of decedents or of missing or unknown persons, which a state may maintain and apply to depositors in national banks.

Nor are we able to discern any greater or different effect so far as prospective depositors in national banks are concerned, from the application of the ancient law of escheat or forfeiture of goods as *bona vacantia,* to bank accounts found to be without an owner, or to have been in fact abandoned by their owners. Compare *United States* v. *Klein, supra.* True, under the Kentucky statute, as in the case of an attachment or the administration of the estate of a deceased depositor, a change in the dominion over the accounts will ensue, to which the bank must respond by payment of them on lawful demand. But this, as we have said, is nothing more than performance of a duty by the bank imposed by the federal banking laws, and not a denial of its privileges as a federal instrumentality. In all this we can perceive no denial of constitutional right and no unlawful encroachment on the rights and privileges of national banks.

Since Kentucky may enforce its statute requiring the surrender to it of presumptively abandoned accounts in national as well as state banks, it may, as an appropriate

incident to this exercise of authority, require the banks to file reports of inactive accounts, as the statute directs. *Waite* v. *Dowley, supra; Colorado Bank* v. *Bedford,* 310 U. S. 41, 53.

*Affirmed.*