[No. E006252. Fourth Dist., Div. Two. July 23, 1990.]

LYNN H. KEITH, Petitioner and Appellant, v.
SAN BERNARDINO COUNTY RETIREMENT BOARD, Defendant
and Respondent.

**COUNSEL**

Tuckerman, Thompson & Sackey and Larry A. Sackey for Petitioner and Appellant.

Alan K. Marks, County Counsel, and Craig S. Jordan, Assistant County County Counsel, for Defendant and Respondent.

**OPINION**

**McDANIEL, J.***—The appeal here is from a judgment entered in favor of defendant, San Bernardino County Retirement Board (Retirement Board), after the trial court denied the petition for writ of mandate filed by plaintiff, Lynn H. Keith (Keith). Keith filed his petition per section 1094.5 of the Code of Civil Procedure to compel Retirement Board to pay him nonservice-connected disability benefits. Retirement Board had previously denied Keith's application for such benefits, based on its findings that Keith's disability was the result of both "intemperate use of alcoholic liquor" and a "violation of law," within the meaning of section 31726.5 of the Government Code. We hold that Retirement Board rightly concluded that a finding of "intemperate use of alcoholic liquor" may be based upon a single instance of such use and we shall affirm the judgment.

### SYNOPSIS OF PROCEDURAL BACKGROUND

Keith was a deputy marshal employed by San Bernardino County until August 26, 1983. On that date, Keith was injured in a nonwork-related accident on his motorcycle. As a result of the injuries Keith sustained, he was no longer able to perform the duties of a deputy marshal. Keith applied for nonservice-connected disability· benefits as provided for in section

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

31726.5 of the *Government Code*.[1] Retirement Board denied Keith's request, finding, in reliance on section 31726.5, subdivision (b), subsection (2), that his disability was due to the "intemperate use of alcohol" and the "violation of law."[2]

Thereafter, Keith requested and received a full "due process" hearing at which he was represented by counsel. The original hearing officer died before preparing a recommended decision. Retirement Board appointed a new hearing officer who reviewed all of the evidence presented at the hearing, including the transcript of witness testimony, and issued his "Summary of Evidence, Proposed Findings of Fact, Conclusions of Law and Recommendations." In his "Conclusions of Law," the new hearing officer determined that Keith's disability was due to intemperate use of alcoholic liquor and violation of law, within the meaning of section 31726.5.

Retirement Board thereafter, and per section 31534, subdivision (b),[3] called for the transcript and evidence received by the hearing officer. After polling its members to determine that they had read the transcript and reviewed the evidence, Retirement Board adopted the hearing officer's findings and conclusions, with certain modifications not pertinent here. Retirement Board then issued its decision:

"1. Lynn H. Keith shall be retired for disability from County service.

"2. The Board of Retirement has determined that such disability did not arise out of and in the course of his employment with the County of San

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

[2] Government Code, section 31726.5 provides, in pertinent part, that, " . . . Every safety member under age 55 who is retired for nonservice-connected disability . . . shall receive a disability retirement allowance which shall be the greater of: [¶] (a) The sum to which he or she would be entitled to as service retirement; or [¶] (b) A sum which shall consist of: [¶] (1) An annuity which is the actuarial equivalent of his or her accumulated contributions at the time of his or her retirement. [¶] (2) If, in the opinion of the board, his or her disability is not due to intemperate use of alcoholic liquor or drugs, willful misconduct, or violation of law on his or her part, a disability retirement pension purchased by contributions of the county or district. . . ."

According to counsel for Retirement Board, a finding under subdivision (b), subsection (2) precludes the claimant from receiving the retirement pension purchased with county funds, but the claimant nevertheless receives the annuity under subsection (1) based on his or her own accumulated contributions.

[3] Government Code, section 31534, states, in pertinent part, that, "The proposed findings of fact and recommendations of the referee shall be served on the parties who shall have 10 days to submit written objections thereto which shall be incorporated in the record to be considered by the board. [¶] Upon receiving the proposed findings of fact and recommendations of the referee, the board may: [¶] (a) Approve and adopt the proposed findings and the recommendations of the referee, or [¶] (b) Require a transcript or summary of all the testimony, plus all other evidence received by the referee. Upon the receipt thereof the board shall take such action as in its opinion is indicated by such evidence, . . ."

Bernardino, and that his disability is due to intemperate use of alcoholic liquor and violation of law on his part within the meaning of Government Code Section 31726.5."

Keith thereafter filed a timely petition for writ of mandate, per section 1094.5 of the Code of Civil Procedure seeking review of Retirement Board's action. Following a hearing, the trial court denied Keith's petition. Judgment was entered accordingly, and this appeal ensued.

DISCUSSION

In pursuing this appeal, Keith makes four assignments of error. We conclude that only two of the four deserve discussion.

■ The first assignment of error which requires discussion is Keith's assertion that he was denied "due process" in the proceedings below. According to Keith, "due process" requires that "an adjudication" must be made by the hearing officer before whom the evidence was presented. Because one hearing officer heard the evidence and a different hearing officer issued the recommended decision, Keith contends he was denied "due process." Not so.

Procedural due process requires, at a minimum, notice and an opportunity to be heard in a proceeding which is ". . . adequate to safeguard the right for which the constitutional protection is invoked." (*Anderson Nat. Bank* v. *Luckett* (1944) 321 U.S. 233, 246 [88 L.Ed.2d 692, 705, 64 S.Ct. 599, 151 A.L.R. 824].) Keith was afforded an opportunity to be heard. More importantly, however, the decision of Retirement Board resulted from its own independent review of the testimony and other evidence presented at Keith's "due process" hearing, a procedure specifically authorized by section 31534, subdivision (b). Keith does not challenge this latter procedure, nor does he offer any relevant authority to support his contention that he was denied procedural due process. We conclude that Keith was afforded procedural due process under the statutory procedure here utilized by Retirement Board.

■ We next address Keith's contention that the phrase "intemperate use of alcoholic liquor" contained in section 31726.5 was intended by the Legislature to mean "habitual intemperance," rather than the intemperate

use of alcohol on a particular occasion.[4] Keith and Retirement Board correctly point out that there are no California cases which interpret this phrase, either in the context of section 31726.5, or in other similar statutes. We must therefore determine what the Legislature intended by its use of this language.

The guiding principles for our analysis are well established and often stated. ▆▆ In *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692 [170 Cal.Rptr. 817, 621 P.2d 856], the Supreme Court said, "In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (*Id.*, at p. 698.)

▆▆ Turning first to the language of section 31726.5, we conclude that the words of the statute are "clear." "Intemperate" means, in its "usual, ordinary import," *lacking moderation.* Webster's defines "intemperate" as "not temperate," such as "immoderate in satisfying an appetite or passion," and specifically as "given to excessive use of intoxicating liquors." (Webster's New Internat. Dict. (3d ed. 1961) p. 1175.) "Intemperate" is not an ambiguous term. Nor is there anything in the manner in which the word is used in section 31726.5 to persuade us that the Legislature intended "intemperate" to have an unusual or out-of-the-ordinary meaning.

The common usage and accepted definition of the term "intemperate" does not imply, as Keith suggests, repeated or "habitual" conduct. Had the Legislature intended to deny nonservice-connected disability benefits only upon a showing of habitual intemperate use of alcoholic liquor, as Keith contends, the Legislature would merely have included the word "habitual" in the statute.[5] We conclude that the Legislature meant nothing more than

---

[4] Keith acknowledges that he was drinking beer during some period of time before the accident. Keith challenges only the statutory interpretation and not the sufficiency of the evidence to support the finding of "intemperate use." Consequently, it is unnecessary for us to discuss the facts in further detail.

[5] In this regard, we note that when the Legislature has intended "habitual," or repeated intemperance, to be a disqualifying event, it has said so. For example, Civil Code, section 232,

what it said: an applicant, such as Keith, may receive a retirement pension paid for with county contributions "if, in the opinion of the board, his or her disability is not due to intemperate use of alcoholic liquor." The intemperate use of alcohol on even a single occasion is such an "intemperate use" if the words of the statute are given their "usual, ordinary import."

Our interpretation of the statutory language comports not only with the plain meaning of the words used, but also with the apparent policy objectives. The Legislature has determined that certain categories of public employees, because of the nature of their public employment and service, should receive disability pensions paid for with public funds even though the disability is not job related. Where, however, the disability is not only not job related, but also is exclusively the result of the public employee's own excessive, illegal or wilfully improper conduct, no public benefit is obtained by requiring the public to "pick up the tab." The fact that the intemperate conduct occurred only once is irrelevant, in light of the policy objective. It is illogical to suggest that policy objectives are promoted only where the disability is the result of habitual intemperance. The Legislature clearly did not intend such a limitation, and we will not now create one.

Having determined that the Legislature intended "intemperate use of alcoholic liquor" to include a single occasion of such use, it is unnecessary for us to address Keith's contention that substantial evidence does not support Retirement Board's finding that Keith's conduct also constituted a "violation of law." Section 31726.5 is framed in the disjunctive, such that a finding of any one of the three disqualifying factors is sufficient to deny the county paid-for retirement pension. Likewise, it is unnecessary for us to address Keith's only remaining contention that before benefits may be denied under section 31726.5 based upon "wilful misconduct" and "violation of law," Retirement Board must demonstrate a nexus between the conduct and/or violation and Keith's job performance.[6]

---

subdivision (a), subsection (3), as amended in 1973, provides for the termination of parental custody or control over a child younger than 18 years of age upon a showing that the ". . . parent or parents suffer a disability because of the habitual use of alcohol. . . ." Likewise, the language of the statute before its 1973 amendment required a showing that the ". . . parent or parents are habitually intemperate." Thus, we are further persuaded that the Legislature knew what it was saying, and intended nothing more than what it said, in its use of the word "intemperate" in section 31726.5.

[6]Keith's brief includes a title for this issue which reads, "RESPONDENTS MUST DEMONSTRATE A NEXUS BETWEEN THE INTEMPERATE USE OF ALCOHOL AND THE APPLICANT'S JOB PERFORMANCE IN ORDER TO DENY DISABILITY BENEFITS UNDER GOVERNMENT CODE SECTION 31726.5." The discussion and argument, however, are limited solely to the factors of "wilful misconduct" and "violation of law." Keith does not mention, least of all discuss, the "intemperate use of alcohol" factor. Accordingly, we need not address this final issue.

## DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Timlin, J., concurred.