Dear Commissioners Bartlett and Hergenroeder:
You have requested our opinion whether the Supreme Court's decision in Barnett Bank v. Nelson, ___ U.S. ___, 116 S. Ct. 1103
(1996), affects the authority of the Maryland Insurance Commissioner to prohibit or regulate the sale of insurance by national banks in Maryland.[1] Our opinion is as follows:
1. Federal law, as applied by the Supreme Court in BarnettBank, preempts the provision of the Insurance Code that effectively prohibits national banks from selling insurance directly.
2. The Maryland Insurance Commissioner may regulate national banks that sell insurance — in particular, by requiring licensing — so long as the regulation does not, in the Supreme Court's phrase, "prevent or significantly interfere with the national bank's exercise of its powers."
 I Insurance Code Restriction
The Maryland Insurance Code provides as follows:
 (1) A partnership or corporation may not accept in its own name commissions, fees, or other compensation for acting as an agent or broker unless it possesses a certificate of qualification. . . .
 (2) To obtain a certificate of qualification, a partnership or corporation must:
 (i) Be primarily engaged in the insurance business;
 (ii) File the appropriate form as adopted by the Commissioner; and
 (iii) Pay the fee set forth in § 41 of this article.
Article 48A, § 168(e) of the Maryland Code. The Insurance Commissioner has consistently applied this section to allow banks to sell insurance only through a separate and distinct subsidiary. The bank could not sell insurance directly, because no bank could satisfy the requirement in § 168(e)(2)(i) that it be "primarily
engaged in the insurance business."
If the bank created a separate and distinct subsidiary for the explicit purpose of selling insurance, the subsidiary could meet the requirements of § 168(e) and therefore be licensed as an insurance agency. The subsidiary could then market and sell insurance through licensed agents and could collect premiums and commissions in the corporate name of the subsidiary. Such premiums might then be paid as dividends to the parent bank.
The question is whether § 168(e), as applied to national banks, has been preempted by federal law.
 II The Barnett Bank Decision
In 1916, Congress enacted a statute that allowed national banks to sell insurance in small towns. 12 U.S.C. § 92.[2] In 1974, Florida adopted a state statute that prohibited any financial institution in Florida from engaging in insurance agency activities. In 1996, the Supreme Court held that, in enacting the federal law, Congress intended to override contrary state law. Accordingly, the Court held that 12 U.S.C. § 92 preempted the Florida statute. Barnett Bank v. Nelson, ___ U.S. ___,116 S.Ct. 1103 (1996).
In concluding that Congress had preempted contrary state law, the Court rejected Florida's argument that the federal statute should be construed "to grant the [national] bank only a very limited permission, that is, permission to sell insurance to the extent that state law also grants permission to do so." BarnettBank, 116 S. Ct. at 1108 (emphasis omitted). Instead, the Court ruled, the federal statutory language "suggests a broad, not a limited, permission" to sell insurance. Id. Moreover, the federal statute "contains no indication that Congress intended to subject that power to local restriction." 116 S. Ct. at 1109-10
(internal quotation marks omitted). Since the Florida statute effectively prohibited banks from selling insurance, the Court held that the Florida statute was preempted.[3]
 III Preemption Analysis
The Maryland statute under review broadly prohibits any corporation from operating as an insurance agent unless the corporation itself is "primarily engaged in the business of insurance." Article 48A, § 168(e). This requirement has the effect of prohibiting a national bank from selling insurance itself or from being an insurance agent. Since 12 U.S.C. § 92
specifically provides that a national bank "may . . . act as agent for any . . . insurer," the Maryland statute and the federal law are in irreconcilable conflict. Section 168(e) would clearly "forbid, or . . . impair significantly the exercise of a power that Congress explicitly granted." Barnett Bank,116 S. Ct. at 1109. For that reason, § 168(e) is preempted by federal law, as enunciated in Barnett Bank, to the extent that 168(e) prohibits national banks from selling insurance. See, e.g.,Franklin National Bank v. New York, 347 U.S. 373 (1954) (New York's restrictions on advertising were incompatible with federal grant of authority to accept deposit and were therefore preempted by federal law).
The fact that a national bank could, under Maryland law, create and operate a subsidiary for the purpose of selling insurance does not change our analysis. A subsidiary is by definition a separate corporation, with a separate corporate existence and separate corporate liabilities. While the subsidiary may be wholly owned by a bank, it is a distinct legal entity and is not itself the bank.
Federal law gives national banks the power to act as insurance agents. As noted by the Court in Barnett Bank, Congress did not intend "to subject that power to local restriction."116 S. Ct. at 1110. Section 168(e) does prevent, or at least significantly restrict, a national bank's authority to sell insurance directly or otherwise act as agent for any authorized insurer. A national bank may choose to create a separate and distinct subsidiary for this purpose, but, in our view, may not be required to do so by State law. The choice whether to sell insurance directly or through a subsidiary is, under federal law, for the national bank to make.[4]
Accordingly, it is our view that Maryland may not, consistent with Barnett Bank, apply § 168(e) to national banks and thereby forbid national banks from selling insurance directly or require national banks to create a subsidiary for the purpose of selling insurance.
 IV Preserved Regulatory Authority
In Barnett Bank, the Supreme Court specifically recognized the authority of a state insurance commissioner to regulate national banks in the sale of insurance:
 In defining the pre-emptive scope of statutes and regulations granting a power to national banks, [prior] cases take the view that normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted. To say this is not to deprive States of the power to regulate national banks, where (unlike here) doing so does not prevent or significantly interfere with the national bank's exercise of its powers.
116 S.Ct. at 1109.[5]
The exact dimensions of the Insurance Commissioner's residual regulatory authority are difficult to state in the abstract. A precise description must await specific regulatory questions, for only then can it be determined whether specific requirements "prohibit or significantly interfere with" national bank's power to sell insurance. At a minimum, however, the Insurance Commissioner may subject national banks to standard State licensing requirements applicable to all entities operating as insurance agencies. Thus, the Insurance Commissioner may require a national bank to have an agency license and operate only through licensed agents employed by the bank, sell insurance only on behalf of licensed insurers, and meet other State law requirements regulating the sale of insurance imposed on licensees generally. Article 48A, §§ 167 and 168.
 V Conclusion
In summary, it is our opinion that federal law preempts the provision of the Insurance Code that effectively prohibits national banks from selling insurance directly. However, the Maryland Insurance Commissioner may regulate national banks that sell insurance — in particular, by requiring licensing — so long as the regulation does not "prevent or significantly interfere with the national bank's exercise of its powers."
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Dennis W. Carroll Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions Advice
[1] You have also asked about the authority of State-chartered banks to sell insurance directly. A separate opinion on that question will be issued later.
[2] Under this provision, a national bank "located and doing business in" a town with a population of 5,000 or less may "act as the agent for any . . . insurance company . . . by soliciting and selling insurance and collecting premiums . . . ." The bizarre codification history of 12 U.S.C. § 92, including its seeming repeal, is recounted in United States Nat'l Bank v. IndependentIns. Agents of America, Inc., 508 U.S. ___, 113 S. Ct. 2173
(1993).
[3] Of course, where a state statute is preempted by federal law, courts are required, under the Supremacy Clause, to follow federal, not state, law. Fidelity Fed. Sav. Loan Ass'n v. dela Cuesta, 458 U.S. 141 (1982).
[4] Federal regulations allow national banks to engage in activities which are incidental to banking, either directly or through operating subsidiaries. However, it is the established policy of the Office of the Comptroller of the Currency to consider such corporate structure issues to be business decisions, which are left to banks' management. See 12 C.F.R. § 5.34.
[5] The Court gave the following examples:
 Anderson Nat. Bank v. Luckett, 321 U.S. 233, 247-252, 64 S.Ct. 599, 606-609, 88 L.Ed. 692 (1944) (state statute administering abandoned deposit accounts did not "unlawful[ly] encroac[h] on the rights and privileges of national banks"); McClellan v. Chipman, 164 U.S. 347, 358, 17 S.Ct. 85, 87-88, 41 L.Ed. 461 (1896) (application to national banks of state statute forbidding certain real estate transfers by insolvent transferees would not "destro[y] or hampe[r]" national banks' functions); National Bank v. Commonwealth, 76 U.S. (9 Wall.) 353, 362, 19 L.Ed. 701 (1869) (national banks subject to state law that does not "interfere with, or impair [national banks'] efficiency in performing the functions by which they are designed to serve [the Federal] Government").
Id.
 *Page 96