BANK OF AMERICA, N.A. Plaintiff,

v.

Joseph MCCANN, et al., Defendants.

No. 4:06 CV 194 RH/WCS.

United States District Court,
N.D. Florida.
Tallahassee Division.

Aug. 14, 2006.

---

David M. Wells, William E. Adams, Jr., McGuire Woods LLP, Jacksonville FL, Howard N. Cayne, Arnold & Porter LLP, Washington, DC, for Plaintiff.

Patrick Shanan Montoya, Colson Hicks Eidson, Coral Gables, FL, for Defendants.

## ORDER ON MERITS

HINKLE, Chief Judge.

This is an action by a national bank seeking to enjoin private individuals (act-

ing as qui tam relators) from pursuing state court litigation against the bank in violation of the National Bank Act. At the conclusion of a consolidated hearing on the bank's motion for a preliminary injunction and trial on the merits, I announced on the record findings of fact and conclusions of law in support of entry of judgment in the bank's favor. This order summarizes the findings and conclusions and directs the clerk to enter judgment.

## I

Plaintiff Bank of America, N.A. (sometimes referred to in this order as "the Bank") is a national bank. It has check-clearing relationships with other banks under which they send Bank of America bundles of checks (sometimes referred to as "cash letters"), and Bank of America pays the banks the face amount of the checks. Primarily because of the volume, mistakes sometimes occur, leading to unreconciled balances owed by or to Bank of America.

Joseph McCann and Richard F. Sorenson are private individuals who formerly were Bank of America employees. They filed in Florida state court a qui tam action—that is, an action under the Florida false claims statute [1]—naming as the sole defendant Bank of America Corporation (sometimes referred to in this order as "the Holding Company"). Bank of America, N.A., is a wholly owned subsidiary of Bank of America Corporation. Bank of America Corporation is not, however, a national bank. The qui tam action remains pending.

In that action, Messrs. McCann and Sorenson ("the Relators") assert that until 2003, Bank of America had a practice of attempting to reconcile the check clearing accounts—that is, to find the source of any errors—only to the extent favorable to Bank of America. The Relators call this working the credits, not the debits. The Relators allege that during the years at issue, this produced a net unreconciled balance of many millions of dollars in favor of Bank of America. The Relators assert that when these funds were unclaimed for the requisite period, they should have been turned over to the State of Florida under the Florida unclaimed property statute. *See* § 717.102(1), Fla. Stat. (2005). The Relators assert that Bank of America instead took the funds into income. The Relators seek to recover these funds on behalf of the state, taking the share to which a relator is entitled under the Florida false claims act. The state has elected not to exercise its statutory right to intervene.

It apparently is uncontested that in the qui tam action, the Relators named the wrong defendant. The clearing operation is run by Bank of America, N.A. (the plaintiff in the case at bar), not by its parent, Bank of America Corporation. Bank of America Corporation advised the Relators of the error, but they did not amend their state court complaint.

Bank of America, N.A. filed this action against the Relators seeking injunctive and declaratory relief. The Bank named no other defendants. The Bank seeks to bar Relators from proceeding against the Bank in state court on the ground that any action by them against the Bank, and any effort by them to examine the Bank's records, would constitute an unlawful "visitation" of the Bank, in violation of the National Bank Act. The Bank does not seek to preclude any action by the state itself—other than any action pursued only through relators—and admits that any ruling in this action will not be binding on the

---

1. *See* § 68.81 *et seq.,* Fla. Stat. (2005).

state itself. The Relators have asserted procedural and substantive defenses.

The Bank moved for a preliminary injunction. The Relators moved to dismiss. The motion to dismiss was carried with the case, and the hearing on the motion for a preliminary injunction was consolidated with the trial on the merits. The parties entered a pretrial stipulation, pursuant to which exhibits 1 through 40 (including certain affidavits submitted in lieu of live testimony) were admitted. Those exhibits comprise the entire evidentiary record.

## II

■ The Relators assert the State of Florida is an indispensable party. But it is not. The judgment in this action will bind only the Relators, not the state acting separately. Indeed, the Bank's entire contention is that under the National Bank Act, *the Relators* have no authority to proceed against the Bank in state court. The Bank does not contest the ability of the state itself, acting through "lawfully authorized State auditors and examiners," 12 U.S.C. § 484(b), to do so.

Thus on the claim as framed by the Bank, "complete relief" can be granted against the Relators without the presence of the State, *see* Fed.R.Civ.P. 19(a)(1), disposition of this action will not as a practical matter impair or impede the state's ability to protect its interests, *see* Fed.R.Civ.P. 19(a)(2)(i), and no party will be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations, *see* Fed.R.Civ.P. 19(a)(2)(ii). The State is not an indispensable party.

## III

■ The Relators next invoke the Anti–Injunction Act, which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. For two separate and independent reasons, each of which would be sufficient standing alone, the Act does not help the Relators here.

■ First, the Act does not bar an injunction blocking the initiation of a state lawsuit not yet filed. *See Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). A corollary is that even when there is a pending state court lawsuit, the Act does not bar an injunction against future state court proceedings against a "stranger" to that litigation. *See County of Imperial v. Munoz,* 449 U.S. 54, 59–60, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980). Lower courts have held, and at trial the Relators expressly agreed, that a "stranger" is a person who is neither a party nor in privity with a party to the state litigation. *See, e.g., Munoz v. County of Imperial,* 667 F.2d 811 (9th Cir.1982) (on remand). Under the law of the Eleventh Circuit, and in the circumstances of the case at bar, privity exists if the Holding Company is the virtual representative of the Bank, or the Bank controls the Holding Company. *See EEOC v. Pemco Aeroplex, Inc.,* 383 F.3d 1280 (11th Cir. 2004). A four-part test governs the issue of virtual representation. *Id.* at 1287. Under that test, the Holding Company was not the virtual representative of the Bank.[2]

**2.** First, the Bank did not participate in the state court lawsuit. Second, the Bank did not consent or appear to consent to be bound by the state court lawsuit. Third, the Bank engaged in no tactical maneuvering: it never appeared in the action at all; the Relators eventually were given notice they had sued the wrong party; and the Bank did nothing inconsistent with an intention to assert its federal rights in federal court. Fourth, there

Nor did the Bank control the Holding Company.

Second, the National Bank Act establishes the primacy of the federal government, through the Office of the Comptroller of the Currency, as the regulatory authority over national banks. The visitation statute here at issue, 12 U.S.C. § 484, has as a primary purpose limiting state interference. The Anti–Injunction Act does not bar injunctions "expressly authorized by Act of Congress." An injunction enforcing the clear terms of the National Bank Act is such an injunction. *See Bank One Delaware, NA v. Wilens,* 2003 WL 21703627 (C.D.Cal. June 13, 2003).[3]

The Anti–Injunction Act does not bar the relief sought by the Bank in this action.

### IV

■ The Relators next argue for abstention under the doctrines set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Factors making abstention inappropriate here include the predominance of federal law in this area and the fact that the Bank of America, N.A.—the plaintiff in the case at bar—is

not a party to the ongoing state litigation. Indeed, as set forth below, this is an area in which the authority of the state to act at all is narrowly limited; joinder of the Bank as a party to the pending state court action would exceed the scope of that authority. And it is no answer to say the Bank could assert its federal defenses in any such state lawsuit; the Bank has a federal right not to be subjected to the state litigation at all.

### V

■ The National Bank Act preempts state laws that otherwise would restrict various practices of national banks. *See, e.g., Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). The Act does not, however, preempt state unclaimed property laws; those laws remain valid. *See Anderson Nat'l Bank v. Luckett,* 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944). The validity of those laws does not mean, however, that states have free reign to enforce those laws through whatever means they choose. To the contrary, state enforcement of unclaimed property laws must comply with the "visitation" principle embodied in the National Bank Act.

The National Bank Act gives the Office of the Comptroller of the Currency the

---

is a close relationship between the Bank and the Holding Company, but this factor alone does not trump the other three; it is not the case that a parent is always the virtual representative of its subsidiary. Absent additional circumstances, a national bank, with its own identity and own set of regulatory obligations, is its own entity, not the virtual representative of, and even more clearly not virtually represented by, its parent.

3. This is a specific application of the more general principle adopted in *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). There the Court said that in order to come within the "expressly author-

ized" exception to the Anti–Injunction Act, "an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding...." 407 U.S. at 237, 92 S.Ct. 2151. The Court continued: "The test ... is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." 407 U.S. at 238, 92 S.Ct. 2151. These conditions are met here.

authority, and indeed the duty, to conduct examinations of national banks. The Act limits the authority of states to conduct their own examinations, sometimes archaically referred to as "visitations" or "visitorial powers." *See* 12 U.S.C. § 484. When a state court held that an examination by state authorities to enforce its unclaimed property laws was not a visitation prohibited by § 484, in part because such an examination was "authorized by law" within the meaning of the statute, Congress promptly amended the Act, limiting the "authorized by law" exception to visitations "authorized by *Federal* law" (emphasis added), and adding a new § 484(b), explicitly authorizing—but also limiting—state visitations to enforce unclaimed property laws. The statute now provides:

> (a) No national bank shall be subject to any visitorial powers except as authorized by *Federal* law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any committee of Congress or of either House duly authorized.

> (b) Notwithstanding subsection (a) of this section, *lawfully authorized State auditors and examiners* may, at reasonable times and upon reasonable notice to a bank, review its records solely to ensure compliance with applicable State unclaimed property or escheat laws upon reasonable cause to believe that the bank has failed to comply with such laws.

12 U.S.C. § 484 (emphasis added).

This statute sets forth the scope of state visitorial powers to enforce unclaimed property laws. The states have as much, and only as much, authority as given by this section.

A visitation, within the meaning of the statute, includes any attempt to regulate banking activities (or to examine a bank's records in connection with such an attempt), whether by sending in a team of auditors or filing a lawsuit and conducting discovery as part of the litigation. *See, e.g., Bank One Delaware, NA v. Wilens,* 2003 WL 21703627 (C.D.Cal. June 13, 2003). The Relators say state unclaimed property laws do not regulate banking activities that are subject to the National Bank Act's preemptive effect, but examining a bank's records to assess compliance with state unclaimed property laws is nonetheless a visitation, as Congress plainly understood when it adopted § 484(b).[4]

The Relators also contend that a state qui tam action comes within the § 484 exception for visitorial powers "vested in the courts of justice." If that were true, the limitations Congress adopted in § 484(b) would be hollow indeed; a state having no "reasonable cause" to believe an unclaimed property violation had occurred could simply file a lawsuit and go forward, conducting its examination through civil discovery. Whatever the scope of the "vested in the courts of justice" exception, it does not allow a lawsuit and attendant discovery authorized by nothing more than the very filing of the lawsuit itself. There must, instead, be some other lawful basis for the action.[5]

---

**4.** Thus the Relators are incorrect in implicitly suggesting that the scope of preemption is the measure of what constitutes a visitation. Even if this were not so, the Relators' position still would fail; turning over unclaimed property may not be a banking activity, but clearing checks plainly is. By the qui tam action,
the Relators propose to examine the Bank's check clearing activities.

**5.** Examples might include a shareholder's right to examine corporate records—a right existing by virtue of the shareholder's status and laws governing that status, valid separate

■ The real issue, then, is whether § 484(b) authorizes a qui tam action of this type. Before turning to that issue, it bears emphasis that it should surprise nobody that § 484(b) is controlling. Congress has spoken in one place and one place only to the precise question at issue here: the scope of a state's authority to examine a national bank's records to assess the bank's compliance with state unclaimed property laws. That place is § 484(b). If the Relators can meet the strictures of that statute, they may proceed. If not, they cannot proceed. In the end, it is that simple.

The statute imposes two prerequisites to a state visitation for this purpose. First, a visitation may be conducted only by "lawfully authorized State auditors and examiners." Second, there must be "reasonable cause to believe that the bank has failed to comply" with state unclaimed property laws. The Relators have proffered affidavits they say establish reasonable cause, and I assume, without deciding, that the affidavits are indeed sufficient for this purpose. The critical issue, then, is whether the Relators are "lawfully authorized State auditors and examiners." I conclude that they are not.

Nothing in the Florida false claims act or elsewhere in Florida law suggests any intention on the part of the State of Florida to vest qui tam relators with any authority to enforce state law except in one limited respect—by bringing lawsuits in the name of the state, subject to the right of the state to intervene. A state presumably could choose to privatize its bank examination force, contracting with private entities or individuals for examination ser-

vices, and could choose to pay examiners as deemed appropriate, perhaps even on a commission. A state presumably could choose to conduct examinations through its court system rather than in the more traditional manner in the field. If the Florida Legislature or Chief Financial Officer imbued qui tam plaintiffs with the right to conduct examinations for unclaimed property violations—including of national banks—I assume, for present purposes, that the qui tam relators would thereby become "lawfully authorized State auditors and examiners." But neither the Florida Legislature nor the Chief Financial Officer—nor any other state authority—has purported to give qui tam relators any such authority. Their mere role as qui tam relators does not vest them with the authority of the state. *See United States v. Texas Tech Univ.*, 171 F.3d 279 (5th Cir.1999); *United States ex rel. Lamers v. City of Green Bay*, 924 F.Supp. 96 (E.D.Wis.1996).

Under Florida law as it now exists, a private individual with no authority to act for the state other than as a relator in a qui tam action is not a "lawfully authorized State auditor [or] examiner[ ]" within the meaning of § 484(b).[6] The Bank cannot properly be joined in an action maintained solely by such a relator, nor may the Bank's records be examined in connection with such an action.

## VI

The limits of this ruling should be underscored. This order addresses the authority of qui tam relators imbued of no state authority other than in their limited role of maintaining lawsuits in the name

---

and apart from a lawsuit seeking their enforcement.

**6.** Nor is the state court itself a lawfully authorized state auditor or examiner. Under

Florida law, the state has no authority itself to conduct examinations or investigations of any kind; its role, instead, is to preside over and to adjudicate lawsuits prosecuted by others.

and for the benefit of the state, subject to the state's right to intervene. The State of Florida, if it acts through "lawfully authorized State auditors and examiners" and otherwise meets the requirements of § 484(b), may exercise visitorial powers over the Bank for the purpose of enforcing state unclaimed property laws. The Bank has admitted as much. Nothing in this ruling is to the contrary.

## VII

For these reasons,

IT IS ORDERED:

1. It is hereby declared that defendants Joseph McCann and Richard F. Sorenson, as relators in an action under the Florida false claims act, have no authority to pursue an action against the plaintiff Bank of America, N.A., arising from the Bank's failure to pay over alleged unclaimed property to the State of Florida, or to compel the Bank of America, N.A., to turn over records relating to unclaimed property in connection with any lawsuit, unless the State of Florida intervenes in or otherwise joins the lawsuit as a plaintiff.

2. Defendants Joseph McCann and Richard F. Sorenson are hereby enjoined from pursuing any action against the plaintiff Bank of America, N.A., arising from the Bank's failure to pay over alleged unclaimed property to the State of Florida, or to compel the Bank of America, N.A., to turn over records relating to unclaimed property in connection with any lawsuit, unless the State of Florida intervenes in or otherwise joins the lawsuit as a plaintiff.

3. The clerk shall enter judgment in favor of the plaintiff Bank of America, N.A. and against the defendants Joseph McCann and Richard F. Sorenson, for declaratory and injunctive relief as set forth in paragraphs 1 and 2 above.

4. Defendants' motion to dismiss (document 14) is DENIED.

5. All other pending motions are DENIED AS MOOT.